**IN THE COURT OF APPEALS OF IOWA**

No. 21-0802
Filed August 18, 2021

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**A.B., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher & Livingston, P.L.C., Fort Dodge, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child, J.B., born in June 2016. The child was removed from the mother's care and custody in September 2019 and was adjudicated a child in need of assistance (CINA) on December 18. The mother has struggled for more than a decade with mental-health and substance-abuse issues. Her parental rights to two older children were terminated due to essentially the same issues, with which the mother continues to struggle. Yet, in October 2020—"based on the mother's positive trajectory at that time"—the juvenile court denied termination of the mother's parental rights and granted a six-month extension to achieve reunification.[1] In granting the extension, the court wrote:

> At this point in time, the mother appears to be headed in the right direction. Although the fact that she has failed to drug test on some occasions is concerning, the mother's substance abuse counselor [Hannah Rose McLimans], the State's own witness, averred that the mother is doing well in treatment and has been clean for over two months. McLimans recently started to observe a new energy in [the mother] to address her substance abuse issues. [The mother] is also engaged in mental health treatment. The court cannot terminate parental rights under these circumstances. The suspicions of the State and guardian ad litem that the mother will again fail at treatment may prove correct, but at this moment, the mother appears to be progressing towards reunification. If the mother does continue on this positive trajectory, it is likely that she can address the other concerns of the department [of human services (DHS)] in her clean state and reunify with the child.

Sadly, the mother relapsed on methamphetamine, testing positive for the drug in October, November, and December 2020, and in February, April, and May 2021.

---

[1] The putative father's parental rights were terminated at this time.

At the May 25 termination-of-parental-rights hearing, the mother asked that J.B. be returned to her care as she was currently staying in a safe facility and had not used methamphetamine for twenty-five days. In the alternative, she requested another six-month extension because she felt more ready to address her long-standing issues, had obtained an AA sponsor, was attending AA meetings, and had reengaged in mental-health counseling. She explained she was not able to complete inpatient treatment because she had an anxiety disorder and agoraphobia but felt her current outpatient treatment plan would allow her to maintain her sobriety. DHS and the child's guardian ad litem recommend termination of parental rights.

On May 27, the juvenile court noted the mother's addiction and mental-health problems were particularly "tragic" because "[b]y all accounts the mother does very well with the child during visits." The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2021).

The mother appeals, contending the State failed to prove the grounds for termination existed and termination is not in the child's best interests because of the closeness of the parent-child bond. She requests an additional extension of time.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868

N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435. We address the termination of the mother's parental rights under section 232.116(1)(f).[2]

There is no doubt J.B. is four years of age or older, has been adjudicated CINA, and has been out of the mother's custody for well beyond the statutory period. *See* Iowa Code § 232.116(1)(f)(1)–(3). The mother, however, contends the State failed to prove J.B. could not be returned to her at the present time because she was currently sober and in a safe environment. *See id.* § 232.116(1)(f)(4).

When the extension was granted to the mother, she knew reunification with her child depended upon her continued sobriety and engagement in mental-health counseling to address her several mental-health diagnoses. Unfortunately, she has been unable to obtain housing, employment, or any semblance of long-term sobriety. Nor has she adequately addressed her mental-health needs. We adopt the juvenile court's findings and conclusions:

> [The mother's] substance abuse issues are exacerbated by her poor mental health. She has depression, anxiety, PTSD, and

---

[2] Iowa Code section 232.116(1)(f) allows the court to terminate parental rights if:
The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a [CINA] pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

> agoraphobia. The mother is not currently taking medication for these conditions and does not have a mental health appointment scheduled until June 1, 2021. [Her] mental health problems prevent her from completing substance abuse treatment. She claims that her anxiety becomes suffocating when she goes into an inpatient setting. [The mother] needs to address her mental health concerns before she can be successful at beating her addiction. Unfortunately, she has failed to do so.

We affirm the juvenile court's determination the child could not be returned to the mother at present and the statutory factors under section 232.116(1)(f) are met.

Even after grounds for termination have been established, we must still determine whether termination is proper under subsections 232.116(2) and (3). *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021) (noting appellate review is a three-step process; if grounds for termination exist, we "determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and if so, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights" (citations omitted)). The mother has blended these two issues, arguing termination is not in the child's best interests and would "be detrimental to the child due to the closeness of the parent-child relationship." She also contends the juvenile court erred in denying an additional six-month extension. We will combine our discussion of these several claims.

We note it is the State's burden to prove termination of parental rights is in the child's best interests and the mother's burden to prove the applicability of an exception to termination. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). When considering a child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and

growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In making this determination, we may consider a number of statutorily enumerated factors, including whether the parent's ability to provide for the needs of the child is affected by her mental capacity or mental condition, whether a child has become integrated into a foster family, and how continuity would affect the child. *See id.* And, when evaluating whether termination of parental rights is in the child's best interests, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (citations omitted).

"[T]he defining elements of a child's best interests are safety and need for a permanent home." *In re. I.S.*, No. 20-0976, 2020 WL 6481088, at *4 (Iowa Ct. App. Nov. 4, 2020). As our supreme court has explained, where grounds for termination have been established, "the legislature . . . has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990).

At the time of the termination hearing, J.B. was just shy of five years of age and has waited more than the statutory period for the mother to overcome her substance-abuse and mental-health issues. As noted by the juvenile court:

> The CINA case started in September of 2019, approximately [twenty] months ago. The mother is no closer to reunification today than she was then. [She] still has profound mental health and substance abuse issues that she has failed to meaningfully address. [J.B.] has had numerous placements since this case started and he deserves, at long last, a permanent, safe, and stable home. The foster parents can provide that home and the mother cannot.

We are also cognizant the mother's struggles have been ongoing for more than a decade. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what the future holds for the child if returned to the parent, "we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future"). We conclude the State has shown termination of parental rights is in J.B.'s best interests. We will no longer delay the child's need for a safe and permanent home by providing the mother additional time to attempt to address her long-standing issues. *See id.* at 175 ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." (citation omitted)). And the mother has failed in her burden to establish "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(c). We affirm the termination of the mother's parental rights.

**AFFIRMED.**